# IN THE COURT OF APPEALS OF IOWA

No. 20-0099
Filed August 19, 2020

IN THE INTEREST OF A.O. and K.O.,
Minor Children,

A.M., Mother,
　　　Petitioner-Appellee,

G.O., Father,
　　　Respondent-Appellant.
_____

Appeal from the Iowa District Court for Plymouth County, Daniel P. Vakulskas, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Jennifer Bennett Finn of Pelzer Law Firm, LLC, Estherville, for appellant father.

Kelsey Bauerly Langel of Bauerly & Langel, P.L.C., Le Mars, for appellee mother.

Theresa Rachel of Fankhauser, Farrens & Rachel, PLC, Sioux City, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and May and Ahlers, JJ.

**BOWER, Chief Judge.**

A father appeals the juvenile court's termination of his parental rights in a private termination action. We find clear and convincing evidence supports the grounds for termination, termination is in the children's best interests, the father did not establish his counsel provided ineffective assistance, and his due process rights were not violated. We affirm.

**I. Background Facts & Proceedings**

A.M., mother, and G.O., father, are the parents of two children born in 2013 and 2014. The parents never married but were together from approximately 2009 until 2015.

After separating, the parties' relationship was tumultuous. In November 2015, the father obtained a temporary protective order against the mother, which the court cancelled when the father failed to prove the allegations. In March 2016, the mother was awarded physical care of the children, and the father was ordered to pay child support.[1]

The mother has had physical care of the children for most of their lives. She and the children live with the mother's long-term partner, who contributes to their financial support and treats the children as his own. The couple is engaged, and the partner seeks to adopt the children. The children refer to him as "daddy."

The father has a long history of substance abuse. He has been arrested and incarcerated multiple times since the custody order, accruing assorted theft, driving, drug, and weapons offenses. In January 2017, the father pleaded guilty

---

[1] In the custody decree, the court noted concerns with the father's incarcerations, lack of stability, and association with people with significant criminal histories.

to harassing the mother, resulting in the extension of a no-contact order for five years.[2]  He was incarcerated from 2017 until August 2018.  The mother claims he did not send any letters or try to call the children during that time, but the father's sister states he called his mother's house to talk with the children often.  After his release in 2018, the father relapsed on drugs and, in May 2019, he was arrested and incarcerated again.  The father was incarcerated at the time of the termination hearing, expecting to be paroled and discharged in 2020.  Neither the father nor his family notified the mother when he went to jail in 2017 or 2019, despite the effect on his ability to visit his children.

The father made minimal, infrequent payments of child support.  As of March 2019, the father was over $10,000 delinquent on child support.  During his most recent employment between August 2018 and April 2019, the father failed to make regular child support payments.  He explained, "I would just get so mad that [the mother] wasn't letting me see [the children], and I guess that was my reasoning that I would use, I'm not going to pay you if you're not going to let me see my kids."  The father's parents made two payments toward the father's child support obligations in October and November 2019.

The father did not regularly see the children.  While incarcerated, he would call family members when the children were with them.  In August 2018, after the father was released from prison, the mother and father agreed the father could have visits supervised by his mother.  The children visited the father's family regularly, including out-of-state trips to extended-family gatherings.  The father was

---

[2] The mother testified she was not notified of the extension.

only present at a few of the visits, with his absences increasing after his most recent relapse.[3]  When the paternal grandmother cared for the children for a week in early 2019, the father did not visit them.

The father testified, "[The mother] allowed my parents, but she told my parents that if I was to show up that they wouldn't be allowed to see [the children], so my mom told me I couldn't come see them anymore."  He further testified the mother would not respond to any communications from him regarding visiting the children.  In May, the mother told the father's family she did not want the father around the children, cut off their visits with the children, and stopped answering text messages.

In June, the mother filed a petition to terminate the father's parental rights, alleging the father had abandoned the children and failed to financially support them.  After the filing, the father attempted to contact the children through text messages, phone calls, and letters from jail, but the mother did not answer any calls or text messages from him.

A two-day hearing was held in October and November.  The mother and her partner testified, as did the father and several of his family members.  The court asked both parents to submit written closing arguments and the guardian ad litem (GAL) to submit a position statement.

The juvenile court found the mother met her burden on both grounds alleged in the termination petition.  The father appeals.[4]

---

[3] Some of the father's movements were limited by parole conditions.
[4] The mother asserts the father's claims are not preserved because his proof brief was filed one day late.  The Iowa Rules of Appellate Procedure provide an appellant time to cure default after the failure to comply with an appellate deadline.

**II. Standard of Review**

Our review in private termination proceedings is de novo. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). We give deference to the factual findings of the juvenile court, especially those relating to the credibility of witnesses, but we are not bound by the court's findings. Iowa R. App. P. 6.904(3)(g); *B.H.A.*, 938 N.W.2d at 232. The grounds for termination of a parent's rights must be established by clear and convincing evidence. *In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018). Our "paramount consideration" in private termination proceedings is the best interests of the children, though we also consider the parents' interests. Iowa Code § 600A.1 (2019); *B.H.A.*, 938 N.W.2d at 232.

**III. Analysis**

**A. Grounds for Termination.** "Iowa Code chapter 600A provides the exclusive means by which parental rights shall be terminated for a minor child who is neither subject to the Iowa Indian Child Welfare Act, nor subject to termination pursuant to chapter 232." *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012).

One of the statutory grounds asserted by the mother is abandonment. For purposes of chapter 600A, abandonment happens when a parent "rejects the duties imposed by the parent-child relationship, . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(20).

---

*See* Iowa R. App. P. 6.1202(1)(a); *see also Yunek v. Cont'l Cas. Co.*, No. 11-1693, 2012 WL 3194113, at \*3 (Iowa Ct. App. Aug. 8, 2012).

A parent is deemed to have abandoned a child who is at least six months old,

> unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>     (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
>     (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
>     (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

*Id.* § 600A.8(3)(b). The parent's subjective intent "does not preclude a determination that the parent has abandoned the child." *Id.* § 600A.8(3)(c).

The second ground asserted in the petition is the father's failure to financially support the children. If "[a] parent has been ordered to contribute to the support of the child . . . and has failed to do so without good cause," it is grounds for ordering the termination of parental rights. *Id.* § 600A.8(4).

The father's challenge to the abandonment allegation is that the mother prevented him from having regular visitation and communication with the children. It appears the father did make minimal efforts—only when it suited him—to maintain communication with the children facilitated by his family members.

However, regardless of whether the mother prevented the father from exercising visitation, the father is unable to meet the predicate requirement of "contribution toward support of the child[ren] of a reasonable amount, according to the parent's means." *Id.* § 600A.8(3)(b); *see In re W.W.*, 826 N.W.2d 706, 710

(Iowa Ct. App. 2012) (considering a termination where the parent claimed to have been prevented from seeing the children but provided no financial support). Moreover, his failure to contribute to their financial support is "without good cause." Iowa Code § 600A.8(4).

From the time of the custody order in 2016, the father did not make any child support payments despite holding various jobs. The first recorded child support payment happened when he was in prison in 2017 and a few dollars a month were withheld toward his obligation. When released from prison, the father made "a few" child support payments but did not make them regularly despite his employment. He made only a single payment in 2019.[5] He testified he chose to not make his child support payments when employed because the mother limited his visitation. This does not constitute "good cause" to fail to contribute to the children's financial support. *See In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998) (noting the key issue in a good-cause determination "concerns the father's ability to pay the ordered child support" (citation omitted)).

The father had a parental obligation to support his children financially but made little effort to contribute toward their support when he was able to do so. We find clear and convincing evidence supports both grounds for termination of the father's parental rights.

**B. Best Interests of the Children.** "The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent." Iowa Code § 600A.1(2). Among the duties the court

---

[5] The father's parents made two payments toward his child support arrears in October and November 2019.

considers are the parent's fulfillment of financial obligations, continued interest in the children, efforts at maintaining communication, and keeping a place of importance in the children's lives. *Id.* In determining the best interests of the children, we also consider the framework described in Iowa Code section 232.116(2)—giving primary consideration to the child's physical, mental, and emotional needs and weighing the closeness of the parent–child bond. *In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010). We look to the child's long-term and immediate interests. *Q.G.*, 911 N.W.2d at 771.

Our supreme court recently decided *Q.G.*, a private termination case with significant similarities to this one: the father had a drug addiction and was incarcerated with limited contact with the children yet had a supportive extended family, and a steady job and social structure to support his reentry after release from prison to avoid relapse. *Id.* at 772–74. And, like the instant case, a father figure was willing to provide for the children's needs and had a bond with the children. *See id.* at 772. In *Q.G.*, the court concluded the father was actively committed to dealing with his drug problem and should be allowed another chance at parenting his children. *Id.* at 774. However, the court observed, "[A]ny future relapse of involvement with drugs or violence may well tip the balance in any future termination action." *Id.* at 774. Here, this father faced virtually the same circumstances as Q.G. and W.G.'s father in 2018. However, when the father was released from incarceration in 2018 and provided another chance to parent his children, he relapsed and failed to assume his duties as a parent.

Looking at the father's history as a parent, we do not see a consistent effort to be a part of his children's lives and assume the role of parent.[6] We agree with the juvenile court's characterization that although the father "clearly loves his children," it was his family that has "done the parenting that [the father] should have been doing." While a continued relationship with the father's family would be in the children's best interests, we cannot say the same for the father. The father has consistently made selfish choices in furtherance of his addiction rather than to prioritize and provide for the children. We find termination of the father's parental rights to be in the children's best interests.

**C. Ineffective Assistance of Counsel.** The father asserts counsel was ineffective for failing to object to the GAL's position statement because—based on the absence of any reference to personal visits or interviews with the children—the GAL did not conduct an independent investigation.[7]

We observe the GAL's report does not make a statement about interviewing the children or seeing their home. Nonetheless, when the GAL cross-examined

---

[6] We recognize the important place the father's family has maintained in the children's lives and the support offered to the mother. But, as the juvenile court noted, the family's continued contact with the children is in the mother's discretion regardless of whether the court dismissed the petition or terminated the father's rights.

[7] We cannot find any Iowa cases addressing an ineffective-assistance-of-counsel claim in relation to a private termination. However, in a state-prosecuted termination, our supreme court noted that, even though the proceedings were civil instead of criminal, "because due process requires counsel appointed under a statutory directive to provide effective assistance, we appl[y] the same standards adopted for counsel appointed in a criminal proceeding." *In re J.P.B.*, 419 N.W.2d 387, 390 (Iowa 1988). The private termination statutes also provide a directive for appointed counsel. *See* Iowa Code § 600A.6A. The father's attorney was appointed pursuant to this section and was obligated to provide effective assistance.

the mother during the termination hearing, the GAL stated, "I think when I was there I met with them in a room upstairs." The father also testified he remembered meeting with the GAL before the hearing. The court specified the GAL's position statement was only to address what was in the best interests of the children.

We find the father has failed to establish the GAL did not conduct an independent investigation and we reject his claim that his attorney provided ineffective assistance by not objecting to the GAL's position statement.

**D. Due Process Rights.** The father next claims his due process rights were violated because he was unable to participate in part of the second day of the hearing. Our supreme court has held "juvenile courts in this state must give incarcerated parents the opportunity to participate from the prison facility in the entire termination hearing by telephone or other similar means of communication that enables the parent to hear the testimony and arguments at the hearing." *In re M.D.*, 921 N.W.2d 229, 236 (Iowa 2018). If that standard cannot be met, "an alternative process that allows the parent to review a transcript of the evidence offered at the hearing" must be provided. *Id.* The purpose of this alternative process is to give the incarcerated parent a chance to review the record of evidence prior to testifying in order to respond effectively to the evidence. *Id.*

The father submitted an affidavit stating he missed the last hour of testimony on the second day of the hearing due to a prison count. [8] This hour included the cross-examination of his mother and the mother's rebuttal testimony. The father had provided his own testimony earlier that day. The affidavit states he "would

---

[8] The father had to leave during a recess for a prison count, and his departure was not included in the transcript of the proceeding.

have benefitted as well if I were able to clarify certain points that had come up during the trial and make a final statement." The motion accompanying the affidavit merely asked the court to correct the record regarding the father's presence, it made no due process claim or request for the court to reconsider.

The father raises this issue for the first time on appeal. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to . . . termination of parental rights cases."). The father was present for all but one hour of the hearing, and provided his testimony before the portion of the hearing he missed. There is no indication the father requested a continuance when he informed the court of his need to leave. Neither the father nor the court requested an expedited transcript of the portion of the hearing he missed. Following the hearing, the court provided over two weeks for counsel to provide written closing arguments when the father could have made any additional response. Under these circumstances, we do not find a violation of the father's due process rights.

**AFFIRMED.**